**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| BRIAN COLLIER, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. |
| v. | ) ) | **CLASS ACTION COMPLAINT FOR** |
| WABCO HOLDINGS INC., JACQUES H. G. ESCULIER, JEAN-PAUL L. MONTUPET, G. PETER D'ALOIA, MICHAEL T. SMITH, DAVID NICHOLAS REILLY, HENRY R. KEIZER, DR. JUERGEN W. GROMER, and THOMAS STEPHEN GROSS, | ) ) ) ) ) ) ) ) ) | **VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMANDED** |
| Defendants. | ) | |

Plaintiff Brian Collier ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This action is brought as a class action by Plaintiff on behalf of himself and the other public holders of the common stock of WABCO Holdings Inc. ("WABCO" or the "Company") against the Company and the members of the Company's board of directors (collectively, the "Board" or "Individual Defendants," and, together with WABCO, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), SEC Rule 14a-9, 17 C.F.R. 240.14a-9, and Regulation G, 17 C.F.R. § 244.100, in connection with the proposed merger (the "Proposed Merger") between WABCO and ZF Friedrichshafen AG ("ZF").

2.      On March 28, 2019, the Board caused the Company to enter into an agreement and plan of merger ("Merger Agreement"), pursuant to which the Company's shareholders stand to receive $136.50 in cash for each share of WABCO stock they own (the "Merger Consideration").

3.      On April 18, 2019, in order to convince WABCO shareholders to vote in favor of the Proposed Merger, the Board authorized the filing of a materially incomplete and misleading Form PREM14A (the "Proxy") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act.   The materially incomplete and misleading Proxy violates both Regulation G (17 C.F.R. § 244.100) and SEC Rule 14a-9 (17 C.F.R. 240.14a-9), each of which constitutes a violation of Section 14(a) and 20(a) of the Exchange Act.

4.      While touting the fairness of the Merger Consideration to the Company's shareholders in the Proxy, Defendants have failed to disclose certain material information that is necessary for shareholders to properly assess the fairness of the Proposed Merger, thereby violating SEC rules and regulations and rendering certain statements in the Proxy materially incomplete and misleading.

5.      In particular, the Proxy contains materially incomplete and misleading information concerning the financial projections for the Company that were prepared by the Company and relied on by Defendants in recommending that WABCO shareholders vote in favor of the Proposed Merger.   The financial projections were also utilized by WABCO's financial advisor, Goldman Sachs International ("Goldman Sachs"), in conducting certain valuation analyses in support of its fairness opinion.

6.     It is imperative that the material information that has been omitted from the Proxy is disclosed prior to the forthcoming vote to allow the Company's shareholders to make an informed decision regarding the Proposed Merger.

7.     For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, based on Defendants' violation of (i) Regulation G (17 C.F.R. § 244.100) and (ii) Rule 14a-9 (17 C.F.R. 240.14a-9). Plaintiff seeks to enjoin Defendants from holding the shareholders vote on the Proposed Merger and taking any steps to consummate the Proposed Merger unless, and until, the material information discussed below is disclosed to WABCO shareholders sufficiently in advance of the vote on the Proposed Merger or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

9.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

10.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because WABCO is incorporated in this District.

## PARTIES

11.     Plaintiff is, and at all relevant times has been, a holder of WABCO common stock.

12.     Defendant WABCO is incorporated in Delaware and maintains its principal executive offices at 1220 Pacific Drive, Auburn Hills, Michigan 48326.  The Company's common stock trades on the NYSE under the ticker symbol "WBC."

13.     Individual Defendant Jacques H. G. Esculier is WABCO's Chief Executive Officer ("CEO") and Chairman and has been a director of WABCO since July 2007.

14.     Individual Defendant Jean-Paul L. Montupet has been a director of WABCO since April 2012, and its Lead Director since March 2017.

15.     Individual Defendant G. Peter D'Aloia has been a director of WABCO since July 2007.

16.     Individual Defendant Michael T. Smith has been a director of WABCO since July 2007.

17.     Individual Defendant David Nicholas Reilly has been a director of WABCO since December 2014.

18.     Individual Defendant Henry R. Keizer has been a director of WABCO since July 2015.

19.     Individual Defendant Dr. Juergen W. Gromer has been a director of WABCO since July 2007.

20.     Individual Defendant Thomas Stephen Gross has been a director of WABCO since March 2016.

21.     The Individual Defendants referred to in paragraphs 13-20 are collectively referred to herein as the "Individual Defendants" and/or the "Board."

## CLASS ACTION ALLEGATIONS

22.     Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public shareholders of WABCO (the "Class").   Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

23.     This action is properly maintainable as a class action because:

a.     The Class is so numerous that joinder of all members is impracticable.  As of April 12, 2019, there were approximately 51 million shares of WABCO common stock outstanding, held by hundreds of individuals and entities scattered throughout the country. The actual number of public shareholders of WABCO will be ascertained through discovery;

b.     There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

i)     whether Defendants disclosed material information that includes non-GAAP financial measures without providing a reconciliation of the same non-GAAP financial measures to their most directly comparable GAAP equivalent in violation of Section 14(a) of the Exchange Act;

ii)     whether Defendants have misrepresented or omitted material information concerning the Proposed Merger in the Proxy in violation of Section 14(a) of the Exchange Act;

      iii)     whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

      iv)     whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the Proposed Merger based on the materially incomplete and misleading Proxy.

c.     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d.     Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

f.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

g.     A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

**I.    The Proposed Merger**

24.    WABCO is a global supplier of electronic, mechanical, electro-mechanical and aerodynamic projects for manufacturers of commercial trucks, buses, trailers and passenger cars. The company engineers, develops, manufactures and sells integrated systems controlling advanced braking, stability, suspension, steering, transmission automation and air compression and processing. WABCO estimates that approximately two out of every three commercial vehicles with advanced and conventional vehicle control systems worldwide are equipped with the Company's products. The Company primarily sells its products to five groups of consumers: Truck and bus original equipment manufacturers ("OEM"); commercial vehicle aftermarket distributors for replacement parts and services and commercial vehicle fleet operators for management solutions and services; trailer OEMs; major car manufacturers; and manufacturers of heavy duty, off-highway vehicles in agriculture, construction, mining and similar industries. WABCO estimates that the truck and bus OEMs customer group is the largest group of customers and accounts for approximately 55% of the Company's sales. Geographically, the Company sells its products worldwide, but 49% of the Company's sales comes from the European market.

25.    On March 28, 2019, WABCO and ZF issued a joint press release announcing the Proposed Merger, which states in pertinent part:

> WABCO Holdings Inc. (NYSE: WBC), a leading global supplier of technologies and services that improve the safety, efficiency and connectivity of commercial vehicles, today announced that it has entered into a definitive merger agreement with ZF Friedrichshafen AG, a privately held global leader in driveline and chassis technologies.
>
> Under the agreement, ZF will acquire all outstanding shares of WABCO for $136.50 per share in an all-cash transaction for an equity value of over $7 billion. The acquisition price represents a 13 percent premium to the closing stock price of

$120.75 on February 26, 2019, the date prior to media reports and WABCO's confirmation that ZF had approached the company. The transaction also represents a premium of approximately 18 percent and 23 percent to the undisturbed Volume Weighted Average Price (VWAP) for the 30 and 90 days ended February 26, 2019, respectively.

The transaction will bring together two global technology leaders serving OEMs and fleets in the automotive and commercial vehicle industry, combining WABCO's capabilities in commercial vehicle safety and efficiency, including technologies involved in vehicle dynamics control, active air suspension systems, and fleet management systems with ZF's leading position in driveline and chassis technologies for cars and commercial vehicles.

Jacques Esculier, Chairman and CEO of WABCO, said: "This is the right combination at the right price at the right time for WABCO. We have a history of successful collaboration with ZF, including prototyping industry-first technologies, and the strategic fit between our two companies is compelling. After a thorough review, we are very pleased to announce a definitive agreement that we believe is in the best interest of WABCO shareholders."

Mr. Esculier continued: "We are proud of WABCO's track record since becoming a stand-alone public company nearly twelve years ago, and we believe our early anticipation of industry dynamics and ongoing ability to innovate technology ahead of others are key contributors to our sustained differentiation and success. We are therefore highly attuned to long-range competitive forces and their potential implications as the sector contemplates a future of autonomous, electric and connected vehicles."

"We see great opportunities ahead, but they will be more challenging to realize," Mr. Esculier added. "It has become increasingly apparent that our industry will face a new level of strategic complexity and will attract new competition, including new entrants from outside the sector, able to bring unprecedented resources to the table. This demands WABCO make critical choices in the role it will play in the future industry value chain. Furthermore, it is anticipated that significant in house investment and new alliances will be necessary to address the full scope of required technologies for these new domains.

"Considering these factors, we strongly believe this is the appropriate moment to be joining forces with ZF, providing access to critical technology and the global size and scale to de-risk the return on investment required as the industry transforms. And as a result it will realize certainty of value and liquidity for our shareholders," Mr. Esculier concluded.

The transaction, which has been unanimously approved by WABCO's Board of Directors, is expected to close in early 2020. It is subject to approval by WABCO's shareholders, customary closing conditions, and regulatory approvals.

For further information regarding all terms and conditions contained in the definitive merger agreement, please refer to WABCO's Form 8-K, which will be filed with the Securities and Exchange Commission in connection with this transaction.

Goldman Sachs International is acting as financial advisor and Skadden, Arps, Slate, Meagher & Flom is acting as legal advisor to WABCO.

26.     It appears that WABCO is well-positioned for financial growth, and the Merger Consideration fails to adequately compensate the Company's shareholders.  It is imperative that Defendants disclose the material information they have omitted from the Proxy, discussed in detail below, so that the Company's shareholders can properly assess the fairness of the Merger Consideration for themselves and make an informed decision concerning whether or not to vote in favor of the Proposed Merger.

## II.     The Materially Incomplete and Misleading Proxy

27.     On April 18, 2019, Defendants caused the Proxy to be filed with the SEC in connection with the Proposed Merger.  The Proxy solicits the Company's shareholders to vote in favor of the Proposed Merger.  Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision concerning whether to vote in favor of the Proposed Merger, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### *Financial Projections that Violate Regulation G and SEC Rule 14a-9*

28.     The Proxy fails to provide material information concerning the Company's financial projections, which were developed by the Company's management and relied upon by the Board in recommending that the shareholders vote in favor of the Proposed Merger.  Proxy 35,

40, 43-44. The Company's management provided two different sets of forecasts to the Board for its consideration. *Id.* at 57. The first set of projections were presented to the Board on February 4, 2019 (the "2018 WABCO Forecasts"), and the second, updated set of projections were presented to the Board on March 27, 2019 (the "2019 WABCO Forecasts") (collectively, the "WABCO Forecasts"). *Id.* Certain of the financial projections also were relied upon by the Company's financial advisor, Goldman Sachs, in connection with its valuation analyses performed in support of its and fairness opinion. *Id.* at 51.

29.     The Proxy provides values for projected non-GAAP (Generally Accepted Accounting Principles) financial metrics from 2019-2027 for:    (1) Operating Income-Performance; (2) Operating Income – Reported; (3) EBIT Performance; (4) EPS – Performance; and (5) Unlevered Free Cash Flows but fails to provide (i) the line items used to calculate these non-GAAP metrics nor (ii) a reconciliation of these non-GAAP projections to the most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a). *Id.* at 58-59.

30.     The Company defines "Operating Income - Performance" as "operating income adjusted for streamlining, separation costs and acquisition-related costs." *Id.* at 58. Additionally, the Company defines "Operating Income – Reported" as "reported operating income unadjusted for streamlining, separation costs and acquisition-related costs." *Id.* However, the Proxy fails to provide the values of any of these line items and fails to reconcile Operating Income – Performance and Operating Income - Reported to their most comparable GAAP equivalent. *Id.*   Indeed, while the term "Operating Income" is a GAAP financial measure, the Proxy specifically states the WABCO Forecasts are "unaudited and were not prepared with a view toward complying with GAAP, the published guidelines of the SEC regarding projections or the guidelines established by

the American Institute of Certified Public Accountants for preparation and presentation of prospective financial information." *Id.* at 57. The above disclaimer makes no exception for any financial measure presented in the WABCO Forecasts. Therefore, Operating Income – Reported is not referring to a GAAP financial measure.

31.     The omitted information is material because it was used to calculate and project critical projected financial measures utilized by the Board and Goldman Sachs to recommend the unfair Merger Consideration, and its omission renders the Board's recommendation, the projected financials, Goldman Sachs' valuations and the Merger Consideration misleading.

32.     Similarly, "EBIT - Performance" is a non-GAAP financial measure and the Company describes it as "earnings before interest and taxes adjusted for streamlining, separation costs, acquisition-related costs and other items that management believes may mask the underlying operating results of WABCO." *Id.* at 58. The Company again fails to provide the values of any of these line items and fails to reconcile EBIT - Performance to its most comparable GAAP equivalent. *Id.* This omitted information is material because it was used to calculate and project critical projected financial measures utilized by the Board and Goldman Sachs to recommend the unfair Merger Consideration, and its omission renders the Board's recommendation, the projected financials, Goldman Sachs' valuations and the Merger Consideration misleading.

33.     Additionally, the Company defined "EPS – Performance," a non-GAAP financial measure, as "reported earnings per share adjusted for streamlining, separation, one-time tax & discrete tax items and acquisition-related costs." *Id.* at 59. The Company fails to provide the values of any of these line items and fails to reconcile EPS - Performance to its most comparable GAAP equivalent. *Id.* This omitted information is material because it was used to calculate and project critical projected financial measures utilized by the Board and Goldman Sachs to recommend the

unfair Merger Consideration, and its omission renders the Board's recommendation, the projected financials, Goldman Sachs' valuations and the Merger Consideration misleading.

34.     The Company explains that Goldman Sachs calculated "Unlevered Free Cash Flow" ("UFCF") using the WABCO Forecasts by "subtracting Cash Taxes, Capex and increases in Net Working Capital from Operating Income — Reported and adding back Depreciation and Amortization." *Id.* Although Goldman Sachs calculated the UFCF, Goldman Sachs used management's projections. The company disclosed the UFCF calculations outside of Goldman Sachs' fairness opinion with the WABCO Forecasts.

35.     Additionally, not all the line items are disclosed. The Company does not provide Cash Taxes. The Company only provides the Cash Tax Rate. *Id.* The cash tax rate is insufficient to calculate the cash taxes because the company does not provide the base for which to multiply the cash tax rate by. Therefore, the lack of a reconciliation of UFCF to its most comparable GAAP equivalent, or at the very minimum providing all the line items, is misleading because the Company regularly analyzes and reports its cash flows.[1] This omitted information is material because it was used to calculate and project critical projected financial measures utilized by the Board and Goldman Sachs to recommend the unfair Merger Consideration, and its omission renders the Board's recommendation, the projected financials, Goldman Sachs' valuations and the Merger Consideration misleading.

36.     When a company discloses non-GAAP financial measures in a Proxy that were relied on by a board of directors to recommend that shareholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not

---

[1] *See* WABCO, 2018 Annual Report (Form 10-K), pp. 54-55 (Feb. 15, 2019).

misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP.  17 C.F.R. § 244.100.

37.     Indeed, the SEC has increased its scrutiny of the use of non-GAAP financial measures in communications with shareholders.  Former SEC Chairwoman Mary Jo White has stated that the frequent use by publicly traded companies of unique company-specific non-GAAP financial measures (as WABCO included in the Proxy here), implicates the centerpiece of the SEC's disclosures regime:

> In too many cases, the non-GAAP information, which is meant to supplement the GAAP information, has become the key message to investors, crowding out and effectively supplanting the GAAP presentation.  Jim Schnurr, our Chief Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I, along with other members of the staff, have spoken out frequently about our concerns to raise the awareness of boards, management and investors. And last month, the staff issued guidance addressing a number of troublesome practices *which can make non-GAAP disclosures misleading*: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data.  I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.  I also urge again, as I did last December, that appropriate controls be considered and that audit committees carefully oversee their company's use of non-GAAP measures and disclosures.[2]

38.     Thus, in order to bring the Proxy into compliance with Regulation G as well as cure the materially misleading nature of the projections under SEC Rule 14a-9 as a result of the omitted information, Defendants must provide a reconciliation table of the non-GAAP measures to the

---

[2]     Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (emphasis added) (footnotes omitted) (last visited Apr. 19, 2019).

most comparable GAAP measures and/or disclose the line item projections for the financial metrics that were used to calculate the aforementioned non-GAAP measures. Such projections are necessary to make the non-GAAP projections included in the Proxy not misleading.

### The Materially Misleading Financial Analyses

39.     Certain of the financial projections at issue were relied upon by the Company's financial advisor, Goldman Sachs, in connection with its valuation analyses and respective fairness opinions. Proxy 51. The opacity concerning the Company's internal projections renders the valuation analyses described below materially incomplete and misleading, particularly as a substantial amount of information has failed to be disclosed. Once a Proxy discloses internal projections relied upon by the Board, those projections must be complete and accurate.

40.     With respect to Goldman Sachs' fairness opinion, in general, it is unclear what numbers Goldman Sachs used in its analysis. The company discloses that the WABCO Forecasts were "provided to WABCO's financial advisor in connection with its financial analyses . . . ." *Id.* at 57. In the same sentence the Company defines WABCO Forecasts to mean both the 2018 WABCO Forecasts and the 2019 WABCO Forecasts. *Id.* Therefore, Goldman Sachs received both the 2018 WABCO Forecasts and the 2019 WABCO forecasts.

41.     In Goldman Sachs' fairness opinion, Goldman Sachs states it reviewed "certain internal financial analyses and forecasts for WABCO prepared by WABCO management, as approved for Goldman Sachs' use by WABCO, which we refer to as the WABCO forecasts in this section of the proxy statement." *Id.* at 51. Goldman Sachs does not distinguish between the 2018 WABCO forecasts and the 2019 WABCO forecasts. Therefore, it is unclear which set of forecasts Goldman Sachs is referring to when it describes the WABCO Forecasts.

42.     The Company explains that the difference between the 2018 WABCO Forecasts and the 2019 WABCO Forecasts is that "[t]he 2019 WABCO Forecasts (as compared to the 2018 WABCO Forecasts) reflect refined expectations with respect to revenue growth and profitability, as well as refined cash tax rate calculations." *Id.* at 59. The updated expectations have the effect of changing amount of revenue received (and, thereby, the profitability of the company) in each forecasted year. In order to value the Company, Goldman Sachs must complete its calculations and then discount the future values to the present year. Indeed, in both the *Illustrative Present Value of Future Share Price Analysis* and the *Illustrative Discounted Cash Flow Analysis*, Goldman Sachs discounted the future values to the present.

43.     When analyzing the differences between the 2018 WABCO Forecasts and the 2019 WABCO Forecasts, all of the disclosed financial performance indicators (Revenue, Operating Income – Performance, Operating Income – Reported, EBIT – Performance and EPS – Performance) in the 2019 WABCO Forecasts were reduced in the years prior to 2023, as compared to the 2018 WABCO Forecasts, and increased from 2023 on, as compared the 2018 WABCO Forecasts. Due to the effect of compound interest, the difference between receiving cash in the near term as compared to receiving cash later is substantial. In effect, the 2018 WABCO Forecasts present the company as having a higher valuation, as compared to the 2019 WABCO Forecasts, because the Company is receiving more cash in earlier years. Therefore, the Company must disclose what year of the WABCO Forecasts Goldman Sachs used in its calculations because the choice between the two sets of forecasts is effectively the choice of choosing a higher or lower valuation. Without the disclosure of which year of the WABCO Forecasts Goldman Sachs used, the shareholders will be incapable of analyzing Goldman Sachs' valuations of the Company and therefore will be unable to properly determine the fairness of the Merger Consideration. Thus,

without the omitted information, the Company's shareholders are being materially misled regarding the value of the Company.

44.     With respect to Goldman Sachs' *Illustrative Present Value of Future Share Price Analysis*, the Proxy states that Goldman Sachs used the WABCO forecasts for each of the fiscal years 2019 to 2022. *Id.* at 53. Goldman Sachs first applied a one-year forward earnings per share multiple of 15.2x to 17.2x to the earnings per share estimates for year 2020 through 2022 to determine the implied value per share in each year. *Id.* at 53-54. Goldman Sachs then discounted the implied values using an illustrative discount rate of 9.0%, reflecting an estimate of WABCO's cost of equity derived from the Capital Asset Pricing Model ("CAPM"). *Id.* at 54.

45.     As explained above, Goldman Sachs does not state which set of the WABCO Forecasts it is using in its calculations. Since Goldman Sachs' analysis only uses data from 2019 through 2022 (the years that the 2019 WABCO Forecasts receives less cash than the 2018 WABCO Forecasts), using the 2019 WABCO Forecasts has the direct effect of lowering WABCO's valuation. Additionally, Goldman Sachs uses CAPM to calculate WABCO's cost of equity. CAPM requires the use of a company's beta, which is company-specific. Neither Goldman Sachs nor the Company disclose what beta was used in the CAPM equation. WABCO's cost of equity was used as the discount rate in this analysis. Therefore, the selection of the beta also has a substantial effect on the valuation of the Company.

46.     Because the line items used in Goldman Sachs' *Illustrative Present Value of Future Share Price Analysis* were not disclosed, shareholders are unable to discern the veracity of Goldman Sachs' analysis. Without further disclosure, shareholders are unable to compare Goldman Sachs' calculations with the Company's financial projections and will be unable to properly determine the fairness of the Merger Consideration. Thus, without the omitted

information, the Company's shareholders are being materially misled regarding the value of the Company.

47.     With respect to Goldman Sachs' *Illustrative Discounted Cash Flow Analysis*, the Proxy states that using discount rates ranging from 8.0% to 9.5%, reflecting estimates of the Company's weighted average cost of capital, Goldman Sachs

> discounted to present value as of December 31, 2018 (i) estimates of unlevered free cash flow for WABCO for the years 2019 through 2027 as reflected in the WABCO forecasts and (ii) a range of illustrative terminal values for WABCO, which were calculated by applying perpetuity growth rates ranging from 1.5% to 2.5%, to a terminal year estimate of the free cash flow to be generated by WABCO, as reflected in the WABCO forecasts (which analysis implied a range of multiples of exit year terminal EBITDA (defined as performance operating income plus depreciation and amortization (excluding transaction-related amortization)) of 7.8x to 11.2x).

*Id.* Additionally, Goldman Sachs states that it derived the discount rates by using the CAPM, which requires the company's target capital structure weightings, the cost of long-term debt, after tax yield on permanent excess cash, future applicable marginal cash tax rate and the beta for the Company. *Id.* Finally, Goldman Sachs derived the illustrative enterprise values and subtracted the net debt and other enterprise value adjustments and divided the derived equity values by the number of fully diluted outstanding shares, all as provided by the Company's management. *Id.*

48.     As explained above, Goldman Sachs does not state which set of the WABCO Forecasts it is using in its calculations. Therefore, although the Company discloses the unlevered after-tax free cash flow projections as calculated by Goldman Sachs, it is unclear which set of UFCF was used in this analysis. Additionally, Goldman Sachs defines its terminal EBITDA calculation as "performance operating income plus depreciation and amortization[,]" *Id.*, but did not disclose the calculated value. Since Goldman Sachs did not state which set of WABCO forecasts it was using in its calculations, it is unclear which version of performance operating income and depreciation and amortization was utilized.

49.     Moreover, the Company does not provide any of the other information it provided to Goldman Sachs for the *Illustrative Discounted Cash Flow Analysis*. The Proxy does not disclose the Company's cost of long-term debt, after tax yield on permanent excess cash, the beta of the Company, the net debt, what the other enterprise value adjustments were nor how many shares are outstanding on a fully diluted basis. Since these line items were not disclosed, shareholders are unable to discern the veracity of Goldman Sachs' *Illustrative Discounted Cash Flow Analysis*. Without further disclosure, shareholders are unable to compare Goldman Sachs' calculations with the Company's financial projections. The absence of any single piece of the above information renders Goldman Sachs' *Illustrative Discounted Cash Flow Analysis* incomplete and misleading. Thus, the Company's shareholders are being materially misled regarding the value of the Company.

50.     As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow analysis a banker takes management's projections and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the terminal value . . . ." *Id.*  As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value . . .  The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness.  This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions[.]

*Id.* at 1577-78 (footnotes omitted).

51.     These omissions from the *Illustrative Discounted Cash Flow Analysis* are all the more misleading because the of how susceptible to manipulation (up or down) the Discounted

Cash Flow Analysis is by using one set of the WABCO Forecasts over the other. Therefore, in order for WABCO shareholders to become fully informed regarding the fairness of the Merger Consideration, the material omitted information must be disclosed to shareholders.

52. With respect to Goldman Sachs' *Premia Analysis*, the Proxy states that Goldman Sachs analyzed the premium paid in 155 transactions from January 1, 2014 to December 31, 2018 where the transaction value was over $2.5 billion. Proxy at 54. On February 4, 2019, Goldman Sachs presented to the Board its preliminary views on WABCO's valuation. *Id.* at 35. During the presentation, Goldman Sachs stated that it did not include an analysis of comparable transactions solely in the commercial vehicle industry due to the limited number of publicly disclosed transactions in the sector. *Id.* Presumably, the 155 transactions Goldman Sachs analyzed in its *Premia Analysis* included transactions from different industries. However, it is not clear why these transactions would be comparable to the Proposed Merger.

53. The Company must disclose what transactions Goldman Sachs analyzed or, at the very minimum, disclose Goldman Sachs' rationale for using these "comparable" transactions in order to make the analysis not misleading. Indeed, Goldman Sachs arrived at a range of implied equity values of $139 to $154 per share, which is higher than the Merger Consideration. *Id.* at 55. Without any information about the selected "comparable" transactions, shareholders are unable to analyze Goldman Sachs' analysis and therefore will be unable to properly determine the fairness of the Merger Consideration. Thus, without the omitted information, the Company's shareholders are being materially misled regarding the value of the Company.

54. In sum, the Proxy independently violates both (i) Regulation G, which requires a presentation and reconciliation of any non-GAAP financial to their most directly comparable GAAP equivalent, and (ii) Rule 14a-9, since the material omitted information renders certain

statements, discussed above, materially incomplete and misleading.  As the Proxy independently contravenes the SEC rules and regulations, Defendants violated Section 14(a) and Section 20(a) of the Exchange Act by filing the Proxy to garner votes in support of the Proposed Merger from WABCO shareholders.

55.     Absent disclosure of the foregoing material information prior to the special shareholder meeting to vote on the Proposed Merger, Plaintiff and the other members of the Class will not be able to make a fully-informed decision regarding whether to vote in favor of the Proposed Merger, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

### (Against All Defendants for Violations of Section 14(a) of the Exchange Act and 17 C.F.R. § 244.100 Promulgated Thereunder)

56.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

57.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

58.     As set forth above, the Proxy omits information required by SEC Regulation G, 17 C.F.R. § 244.100, which independently violates Section 14(a).  SEC Regulation G, among other things, requires an issuer that chooses to disclose a non-GAAP measure to provide a presentation

of the "most directly comparable" GAAP measure and a reconciliation "by schedule or other clearly understandable method" of the non-GAAP measure to the "most directly comparable" GAAP measure.  17 C.F.R. § 244.100(a).

59.     The failure to reconcile the non-GAAP financial measures included in the Proxy violates Regulation G and constitutes a violation of Section 14(a).

## COUNT II

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and
Rule 14a-9 Promulgated Thereunder)**

60.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

61.     SEC Rule 14a-9 prohibits the solicitation of shareholder votes in Proxy statements that contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading[.]"  17 C.F.R. § 240.14a-9(a).

62.     Regulation G similarly prohibits the solicitation of shareholder votes by "mak[ing] public a non-GAAP financial measure that, taken together with the information accompanying that measure . . . contains an untrue statement of a material fact or *omits to state a material fact necessary in order to make the presentation of the non-GAAP financial measure . . . not misleading*."  17 C.F.R. § 244.100(b) (emphasis added).

63.     Defendants have issued the Proxy with the intention of soliciting shareholder support for the Proposed Merger.  Each of the Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things, the financial projections for the Company.

64.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as directors and/or officers, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

65.     The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger.

66.     The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.

67.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy.  The preparation of a Proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

68.     WABCO is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

69.     The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Merger.

## COUNT III

### (Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)

70.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

71.     The Individual Defendants acted as controlling persons of WABCO within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors and/or officers of WABCO, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

72.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

73.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had

the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein and exercised the same.  The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Merger.  They were thus directly involved in preparing the Proxy.

74.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

75.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

76.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B.     Enjoining Defendants and all persons acting in concert with them from proceeding with the shareholder vote on the Proposed Merger or consummating the Proposed Merger, unless and until the Company discloses the material information discussed above which has been omitted

from the Proxy;

     C.     Directing the Defendants to account to Plaintiff and the Class for all damages sustained as a result of their wrongdoing and to award damages arising from proceeding with the Proposed Merger;

     D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

     E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

     Plaintiff demands a trial by jury on all issues so triable.

Dated: April 23, 2019

Respectfully submitted,

**OF COUNSEL:**

**FARUQI & FARUQI, LLP**

**FARUQI & FARUQI, LLP**
Nadeem Faruqi
James M. Wilson, Jr.
685 Third Ave., 26th Fl.
New York, NY 10017
Tel.: (212) 983-9330
Email: nfaruqi@faruqilaw.com
Email: jwilson@faruqilaw.com

By: _/s/ Michael Van Gorder_
Michael Van Gorder (#6214)
3828 Kennett Pike, Suite 201
Wilmington, DE 19807
Tel.: (302) 482-3182
Email: mvangorder@faruqilaw.com

*Counsel for Plaintiff*

*Counsel for Plaintiff*